Kasey C. Nye
SB #020610
knye@waterfallattorneys.com

WATERFALL, ECONOMIDIS, CALDWELL,
HANSHAW & VILLAMANA, P.C.
Williams Center, Suite 800
5210 E. Williams Circle
Tucson, AZ  85711
(520) 790-5828

*Attorneys for Profectus Wealth Management*
*Company Noteholders*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| In re | Chapter 11 |
|---|---|
| HOTEL OXYGEN MIDTOWN I, LLC, a Delaware limited liability company, Debtor. | Case No. 2:19-bk-14399-PS<br>Case No. 2:19-bk-14400-PS<br>Case No. 2:19-bk-14401-PS |
| HOTEL OXYGEN PALM SPRINGS, LLC, an Arizona limited liability company, Debtor. | Case No. 2:19-bk-14402-PS<br>Case No. 2:19-bk-14403-PS |
| OXYGEN HOSPITALITY GROUP, INC., a Delaware limited liability company, Debtor. | **DECLARATION OF ALEKSANDER DYO IN SUPPORT OF CONFIRMATION OF PLAN OF REORGANIZATION** |
| A GREAT HOTEL COMPANY ARIZONA, LLC, an Arizona limited liability company, Debtor. | |
| A GREAT HOTEL COMPANY, LLC, a Delaware limited liability company, Debtor. | |

I, ALEKSANDER DYO, first being duly sworn under penalty of perjury, depose and say:

1.      I am an adult person, the Secretary and Chief Financial Officer of Profectus Wealth Management Company ("PWM") a financial advisory firm that maintains offices at 1055 W. 7th Street, Suite 3260 Los Angeles, California 90017. The testimony that I am

providing in this declaration ("Declaration") is based on my personal knowledge, or the business records of PWM. In my capacity as an officer and director of PWM, I am familiar with its record keeping practices and I am a custodian of records. With respect to any business records relied on in this testimony, all such records are memoranda, reports, documents, or data compilations, of acts, events, conditions, opinions, made at or near the time by, or from information transmitted by, a person with knowledge, kept in the course of a regularly conducted business activity. With respect to any such records relied upon by me in this testimony it was the regular practice of PWM's business activity to make the memoranda, reports, records or data compilations. I am not being specifically compensated for this testimony. If called upon to testify, I could and would testify as to the facts set forth herein.

2. I submit this Declaration on behalf of the proponents in support of confirmation of the *Noteholders Plan of Reorganization for Hotel Oxygen Palm Springs, LLC dated July, 25,* 2020 as such has been amended [Doc. 266, 488] (the "Plan") and final approval of the *Amended Disclosure Statement in Support of Noteholders Plan of Reorganization for Hotel Oxygen Palm Springs, LLC dated July, 25, 2020* [Doc. 343] ("Disclosure Statement").

3. The proponents are a group of 28 noteholders[1] ("Noteholders" or "Proponents") who purchased 42 promissory notes from Hotel Oxygen Palm Springs, LLC ("HOPS") which have a cumulative principal amount of approximately $11.3 MM. HOPS's obligations to the Noteholders are evidenced by 42 separate Secured Promissory Notes (such financing agreements and all other related documentation, all as in effect from time to time, being herein collectively called the "Loan Documents"), pursuant to which Noteholders agreed to make loans to the HOPS, secured by a security interests in

---

[1] Each Noteholder is identified on the *Verified Statements under Rule 2019 Fed. R. Bakr. P.* Doc. 430, 502.

the membership interest in the HOPS, or the HOPS's personal property, as more particularly described in the Loan Documents.

4. On November 12, 2019 ("Petition Date"), HOPS, and certain affiliated entities — Hotel Oxygen Midtown I, LLC ("HOMS"), Oxygen Hospitality Group, Inc., ("OHG"), A Great Hotel Company Arizona, LLC ("AGHCAZ") and A Great Hotel Company LLC ("AGHC") — filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the District of Arizona which have been jointly administered under the caption In re Hotel Oxygen Midtown I, LLC and case number 2:19-bk-014399-PS ("Bankruptcy Cases").

5. Prior to the Petition Date, PWM acted as an agent for Noteholders for purposes of interacting with HOPS in the issuance and administration of the loans to HOPS. Post-Bankruptcy each of these Noteholders entered into an Intercreditor Agency Agreement (the "Intercreditor Agreement") with one another and PWM appointed as "to serve as their agent and single point of contact in the Bankruptcy Case." Noteholders granted PWM authority to retain counsel, and such professionals as it deemed appropriate and to assert and defend Noteholders' rights in the Bankruptcy Case, and to enforce Noteholders' rights outside the Bankruptcy Case. Noteholders authorized PWM to file proofs of claim and take any such steps as PWM deemed necessary to enforce the Noteholders' rights to the greatest extent permitted by applicable law. PWM agreed to advance the funding of the expenses related to the Bankruptcy Case. PWM agreed to obtain Noteholders' express written consent prior to settling with Borrower. Under the Intercreditor Agreement, Noteholders had the right to terminate PWM's agency at any time.

6. I have over 17 years of advisory experience in tax-saving strategies using advanced qualified plan models and charitable gift financing techniques. I have served

-3-

more than 300 business clients during that time, and have generated $40MM+ in tax savings, and directed 500+ wealth creation blueprints. I am a licensed investment adviser specializing in custom-built investment portfolio models focusing on alternatives: real-estate, private equity, insurance-linked products, venture start-ups, and cryptocurrencies. I am a serial entrepreneur, investor, and advisory board member in several financial services, tech, and real estate companies.

7. In PWM's role as an agent for the Noteholders under the Intercreditor Agreement, I have worked closely with my business partner, Kelly Woo, as well as PWM's Vice President of Operations, Yoonah Kim. In connection with our roles with the Noteholders, I and my team at PWM have been closely involved together with our counsel in the preparation of the Disclosure Statement and Plan. Based on my understanding of the Plan, as amended, and the Disclosure Statement, I believe that the Plan complies with the applicable provisions of the Bankruptcy Code, and that the Plan was proposed in good faith, and that the Noteholders, acting through their agents and counsel, have conducted themselves in a manner that complies with applicable law in relation to the formulation and negotiation of, and solicitation of votes on, the Plan.

## I. THE PLAN SATISFIES THE PLAN CONFIRMATION REQUIREMENTS UNDER BANKRUPTCY CODE SECTION 1129

8. Based on my understanding of the Plan, the events that have occurred throughout these Chapter 11 Cases, and discussions that I have had with the Noteholders' legal counsels regarding various orders entered during these Chapter 11 Cases and the requirements of the Bankruptcy Code, I believe that the Plan satisfies all applicable provisions of Section 1129 of the Bankruptcy Code for confirmation of the Plan.

**A. The Plan Complies with Bankruptcy Code Section 1129(a)(1)**

9. Based on my discussions with counsel to the Debtors, I believe that the Plan complies with section 1129(a)(1) of the Bankruptcy Code as follows:

-4-

**1. Requirements for the Plan to be Confirmed are Satisfied.**

10. <u>Section 1122 of the Bankruptcy Code</u>: Article II of the Plan designates the classification of claims and equity interests. I believe the classification structure of the Plan to be rational, as each of the seven Classes contains only claims or equity interests that are substantially similar to one another and have the same or similar rights against the HOPS.

11. <u>Section 1123(a)(1) of the Bankruptcy Code</u>: Article II of the Plan designates Classes of Claims and Interests.

12. <u>Section 1123(a)(2) of the Bankruptcy Code</u>: Article II of the Plan specifies whether each Class of Claims or Interests is Impaired or Unimpaired under the Plan.

13. <u>Section 1123(a)(2) of the Bankruptcy Code</u>: Article II of the Plan specifies whether each Class of Claims or Interests is Impaired or Unimpaired under the Plan.

14. <u>Section 1123(a)(3) of the Bankruptcy Code</u>: Article IV of the Plan sets forth the treatment of any Class of Impaired Claims or Interests.

15. <u>Section 1123(a)(4) of the Bankruptcy Code</u>: The Plan provides that the treatment of each Claim or Interest in the Debtors, in each respective Class, is the same as the treatment of each other Claim or Interest in such Class, except as may be otherwise agreed by the applicable Holders of such Claims or Interests.

16. <u>Section 1123(a)(5) of the Bankruptcy Code</u>: Article VII and various other provisions of the Plan provide adequate means for the implementation of the Plan, including by: (a) paying all allowed secured, administrative and priority claims in full on the effective date; (b) converting unsecured claims to equity in the reorganized HOPS; (c) specifying the sources of consideration for distributions under the Plan; (d) providing for the cancellation of Equity Interests; (e) providing for payment

-5-

of certain fees and expenses; (f) providing authority to undertake corporate actions necessary to effectuate the Plan; (g) providing for the rejection, or assumption and assignment of executory contracts and unexpired leases; and (h) providing authority for the Reorganized Debtor to operate and to pursue certain litigation assets.

17. Section 1123(a)(6) of the Bankruptcy Code: All of the membership interests in the Reorganized Debtor issued to creditors will have equal voting rights, and there are no preferred classes of membership interests.

18. Section 1123(a)(7) of the Bankruptcy Code: The Plan and Disclosure Statement disclose the identity of the Management of the Reorganized Debtor. The selection of this Management is consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the management.

**2. Provisions that May be Included in the Plan Meet Requirements for Confirmation**

19. Section 1123(b)(1) of the Bankruptcy Code: Pursuant to Article II of the Plan, Class 1, Class 2, Class 3, Class 4, and Class 5 are unimpaired, Class 6 and Class 7 are impaired, and Class 8 is impaired and receives nothing on account of the Plan and is deemed to reject the Plan whether Impaired or Unimpaired.

20. Section 1123(b)(2) of the Bankruptcy Code: As permitted by the Bankruptcy Code, Article VI of the Plan provides that, on the Effective Date that unless previously assumed, all of the HOPS executory contracts will be deemed rejected.

21. Section 1123(b)(3) of the Bankruptcy Code: As permitted by the Bankruptcy Code provides of the retention and prosecution of claims and causes of action that belong to the HOPS's Bankruptcy Estate.

22. <u>Section 1123(b)(5) of the Bankruptcy Code</u>: The Plan modifies the rights of holders of claims and interests in Classes 6, 7, and 8, and leaves unaffected the rights of holders of the rights of holders of claims in Classes 1, 2, 3, 4, and 5, which I understand is permitted by section 1123(b)(5) of the Bankruptcy Code.

23. <u>Section 1123(b)(6) of the Bankruptcy Code</u>: It is my understanding that section 1123(b)(6) of the Bankruptcy Code provides that a plan may include any other appropriate provisions consistent with the applicable provisions of the Bankruptcy Code. I believe all provisions of the Plan are consistent with the Bankruptcy Code.

**B. The Plan Complies with Bankruptcy Code Section 1129(a)(2).**

24. On the basis of my understanding and discussions that I have had with the Noteholders' legal advisors, I believe that the Plan complies with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126 regarding disclosure and Plan solicitation. The Noteholders, with the assistance of their professionals, expended a significant amount of time and effort preparing the Disclosure Statement, which was previously conditionally approved by the Court. The Noteholders distributed their Disclosure Statement and solicited acceptances of the Plan, as authorized by the order dated October 5, 2020 [Docket No. 357] approving the Disclosure Statement and setting forth the solicitation process. The Noteholders have obtained Bankruptcy Court conditional approval of the Disclosure Statement as containing adequate information, and the Debtors have complied with all noticing, solicitation, and tabulation requirements, including reserving the Securities and Exchange Commission on November 24, 2020.

**C. The Plan Is Proposed In Good Faith and Is Not by Any Means Forbidden by Law Pursuant to Bankruptcy Code Section 1129(a)(3)**

25. I understand that Section 1129(a)(3) of the Bankruptcy Code requires that a plan be proposed in good faith and not by any means forbidden by law. Based on my

-7-

discussions with Noteholders' legal advisors I understand this to require a plan to achieve the purposes of the bankruptcy code.

26. The Plan has been proposed in good faith for the legitimate and honest purpose of controlling the outcome of the recovery by maximizing the returns available to creditors by allowing the Creditors to own the reorganized HOPS, and implement a sound business plan while preserving the opportunity for these creditors to benefit by recovering on causes of action that belong to the HOPS debtor. In addition, the proposed Plan has not been prohibited by law by any means. The Plan's classification, issuance of membership interests to holders of allowed claims, and discharge, provisions have been proposed in good faith and are consistent with the Bankruptcy Code, and are each necessary for the HOPS' successful reorganization.

**D. The Plan Complies with Bankruptcy Code Section 1129(a)(4).**

27. I understand that, in accordance with Section 1129(a)(4) of the Bankruptcy Code, all payments made or to be made by the Reorganized Debtor for services rendered and expenses incurred in connection with these Chapter 11 Cases have been approved by, or are subject to approval of, by the Court. The Amended and Restated Non-Adverse Modification of the Plan provides for Court approval of such payment.

**E. The Plan Complies with Bankruptcy Code Section 1129(a)(5).**

28. I understand that the Bankruptcy Code requires disclosure of the identity and affiliations of the proposed officers and directors of the Reorganized HOPS post-confirmation; that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and that there be disclosure of the identity of and compensation to insiders retained post-confirmation, if any.

-8-

29. Based on my understanding of the Bankruptcy Code and the advice of counsel for the Noteholders, I believe that the Noteholders have satisfied these requirements through disclosures in the Plan and the Disclosure Statement. It has identified that Kelly Woo and I will manage the Reorganized Debtor through Kingdom Impact Capital, LLC, manager. The Plan and Disclosure Statement also provide information about the management agreement with Vivo Investments to manage the hotel, in addition, pending negotiating a new agreement around conversion of the Ivy Hotel to a multifamily apartments that will be subject to notice and ratification to all members of the Reorganized Debtor.

30. Our appointment to, or continuance in such office is consistent with the interests of creditors and equity security holders and with public policy. A summary of my experience can be seen in my resume which in the record as Exhibit 11. A summary of Kelly Woo's qualifications is in Exhibit 12. Dan Norville's resume summarizing his qualifications can be found in Exhibit 13, and Vivo Living's experience and qualifications can be found in Exhibit 15.

**F. The Plan Does Not Require Governmental Regulatory Approval in Accordance with Section 1129(a)(6).**

31. I am advised that, because the Plan does not provide for any rate changes, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**G. The Plan Satisfies the "Best Interests" Test Under Bankruptcy Code Section 1129(a)(7).**

32. I understand the "best interests" test under section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court finds, as a condition to confirmation of a plan of reorganization, that each holder of a claim or interest in each impaired class either (i) has accepted the plan; or (ii) will receive or retain under the plan property of a value, as of the effective date of the confirmed plan, that is not less than the amount such holder

-9-

would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

33. I am familiar with and worked with the Noteholders counsel to prepare a hypothetical, reasonable and good-faith estimate of the proceeds that would be generated if HOPS were liquidated in accordance with chapter 7 of the Bankruptcy Code, as set forth in more detail in the liquidation analysis attached as Exhibit 4 to the Disclosure Statement. The updated version of which is Noteholders Exhibit 10 to the Confirmation Hearing each holder of a claim or interest of such class has either— (i) has accepted the plan; or, (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date. As stated in the Updated Liquidation Analysis, unsecured creditors stand to receive a 52.9% return in a chapter 7 case, but potentially stand to receive a 100% recovery under the Plan. The concern about a chapter 7 analysis is further obviated by the fact that Profectus Wealth Management has either purchased or tendered payment of all claims not held by the Proponents at 100 cents on the dollar.

**H. The Plan Complies with Bankruptcy Code Sections 1129(a)(8).**

34. I understand that Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept the plan or not be impaired by a plan.

35. As set forth in Counsel's Certification of Ballots [Docket No. 405], the Class 6, the only impaired class eligible to vote, overwhelmingly voted to accept the Plan. Class 7 claims were held by insiders, and therefore not eligible to vote. The only claimant in that class agreed to certain modified plan treatment. Class 8, the Equity Interests in HOPS (held by debtor OHG) receive nothing under the plan and are deemed to reject the Plan. That class not objected the cramdown of its interests in HOPS. Further the Plan

-10-

satisfies the requirements of cramdown under 1129(b). The Plan therefore satisfies Section 1129(a)(8).

### I. The Plan Complies with Bankruptcy Code Section 1129(a)(9)

36. I understand that Section 1129(a)(9) of the Bankruptcy Code requires a plan to satisfy administrative claims, priority unsecured claims, and priority tax claims in full in cash, unless the holder of a particular claim agrees to different treatment with respect to such claim. It is my understanding that the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

37. As required, Article III of the Plan provides allowed administrative claims to be paid in full on latest of the Effective Date, or when such administrative claim is allowed. Furthermore, all allowed priority tax and priority unsecured claims will be paid in full on the Plan Effective Date.

### J. The Plan Complies with Bankruptcy Code Section 1129(a)(10)

38. I understand that Section 1129(a)(10) of the Bankruptcy Code provides that at least one impaired class of claims must accept the Plan, excluding acceptance by any insider. Here, the only impaired class not held by insiders, Class 6, voted to accept the Plan. The Plan therefore complies with section 1129(a)(10) of the Bankruptcy Code.

### K. The Plan is Feasible Under Bankruptcy Code Section 1129(a)(11).

39. I understand that Section 1129(a)(11) of the Bankruptcy Code requires the Court to determine whether a chapter 11 plan is feasible, i.e., that it is not likely to be followed by liquidation or the need for further financial reorganization. I understand that, in the context of the Plan, feasibility is generally established by demonstrating the Debtors' ability to implement the provisions of the Plan with a reasonable assurance of success.

-11-

40. In this case the Plan is Feasible. We have secured exit-bridge financing from Hankey Capital LLC. Copies of the Hankey Loan Documents are Exhibit 4 to confirmation. That financing is contingent only on confirmation of the Plan, execution of the documents and issuance of the title policy. All conditions for issuance of the title policy will be satisfied upon confirmation of the Plan.

41. That financing is estimated to net just under $3.91million for use on the effective date. As reflected on Exhibit 7 attached hereto, that amount is sufficient to pay all administrative claims, US Trustee Fees, allowed professional fees, priority tax claims, and Classes 1, 2, 3, 4, and 5 in full on the effective date. There then will be an additional $1.5 million that can be devoted to a $500,000 capital improvement plan, a $200,000 interest reserve to pay the loan, and $450,000 working capital, and more than $350,000 additional capital that can be used to pay additional professional fees and other unexpected expenses. This is a sufficient capital to make the immediately needed capital improvements, to reopen the hotel to generate cash flow, obtain entitlements to convert the hotel to studio apartments. With operating performance and an improved physical plant, we can exit bridge loan by obtaining a market rate construction financing. See Exhibit 9 and Exhibit 10. We will operate the Hotel while it is feasible per business plan, and then begin construction on the apartments. As reflected in our Operating Projections, we anticipate being able to make distributions from operations that are sufficient to pay creditors in full. As such the plan is feasible.

**L. The Plan Complies with Bankruptcy Code Section 1129(a)(12).**

42. As required by the Bankruptcy Code, Article III, Section 3.03 of the Plan provides for the payment of all fees due and payable pursuant to 28 U.S.C. § 1930 by the Debtors for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

-12-

**M. Sections 1129(a)(13), (14), (a)(15), and (a)(16) of the Bankruptcy Code Are Inapplicable.**

43. I understand that sections 1129(a)(13), (14), 1129(a)(15), and 1129(a)(16) are not applicable to HOPS' Chapter 11 Case given that section 1129(a)(13) of the Bankruptcy Code relates to the continuation of payment of retiree benefits, section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations, section 1129(a)(15) of the Bankruptcy Code applies only in cases in which the debtor is an "individual," and section 1129(a)(16) of the Bankruptcy Code applies to transfers of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust. HOPS does not have any obligation to pay retiree benefits. HOPS is not required to pay any domestic support obligations, HOPS is not an individual, and HOPS is not a nonprofit corporations or trusts.

**N. The Plan Satisfies the "Cramdown" Requirements of Section 1129(b) of the Bankruptcy Code.**

44. I understand that Section 1129(b) of the Bankruptcy Code provides for confirmation of a plan where it is not accepted by all impaired classes of claims and equity interests, i.e., a "cramdown," so long as the plan does not discriminate unfairly and is fair and equitable with respect to such classes.

45. After our agreement with the only HOPS' creditor in Class 7, the only impaired class rejecting the plan is Class 8 Equity Interests in HOPS which are canceled and receive nothing under the Plan and therefore deemed to reject the Plan. The requirements for cramdown are satisfied. There is no unfair discrimination against the Class 8 because there are no similarly situated classes to Class 8 entitled to a recovery under the Plan. In addition, the Plan provides Class 8 with fair and equitable treatment, as there are no Holders of Claims or Interests junior to Class 8 who are receiving or retaining any property under the Plan on account of their Claims and

-13-

Interests, and no holders of Claims or Interests senior to the Claims and Interests of the Class 8 are receiving more than full payment on account of the Claims and Interests in such Classes.

**O. The Plan Complies with Bankruptcy Code Section 1129(c).**

46. I understand that the Plan is the only chapter 11 plan filed as to HOPS in these Chapter 11 Cases for which confirmation is being sought, and, accordingly, section 1129(c) of the Bankruptcy Code does not apply.

**P. The Plan Complies with Bankruptcy Code Section 1129(d).**

47. I understand that the primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and there has been no objection filed by any party asserting such avoidance. The Plan therefore satisfies the requirements of section 1129(d) of the Bankruptcy Code.

## II. WAIVER OF STAY OF EFFECTIVENESS OF CONFIRMATION ORDER

48. I understand that Bankruptcy Rules 3020(e) and 6004(h) impose a 14-day stay of the effectiveness of an order confirming a chapter 11 plan, except as the bankruptcy court may otherwise order. A waiver of the stay would benefit the HOPS and its estate here, by allowing the closing of the Exit Financing immediately, eliminating the need to pay an additional fee for an extension. It will also reduce the accrual of interest on secured claims particularly Class 3, property taxes which are accruing at 18% per annum. This will make more money available to put into turning the property and business around. In addition, effectiveness of the Plan will cut accrual of additional administrative expenses by the Debtors' in the form of professional fees, preserving additional value for distribution to creditors.

-14-

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated January 29, 2021

By  /s/ Aleksander Dyo
      Aleksander Dyo

-15-